Judge Buckner
delivered the opinion of the court.
Bv deed, bearing date 27th September,. 182G, Martin Gentry conveyed to his grandson, Thos, J. Gentry, a tract of land on- which the grantor then lived, in (tie county of Madison, containing two hundred acres, in fee simple, reserving to-himself a lifer estate therein.
In January, 1827, the said Martin made-his last will and testament, by which he devised to his wife, Mary, during her life, several, slaves, and various articles of personal property, among which were five sheep-and' ion hogs. Then follows this clause: “My will and. desire is, that my grandson, Thomas J.' Gentry, take-ear e of his grandmother as long as she lives'; and she-is to live on the land 1 now live on, and to have the-b.enefit of living on it as long as she may live; and after her death, if the deed I made heretofore, to my g-raudson, Thomas J. Gentry, is not sufficient for him •lo'hpid the land whereon I now live, I hereby wall and becjueatli the whole of said tract of land, to the said Thomas J Gentry, and his heirs, forever.” The will furl,bey directs, that nil the rest of his estate, real and *149 personal, should, immediately alter bis death, be sold, apd points ou-t the manner of the distribution of its price,- among some of hi-s children and grandchildren,
By a further provision of the will, the whole of the property devised to his wife for lile, was to be sold, and the money arising therefrom to-be divided among the same persons. Thomas J. Gentry, the grantee, wrote the will; was appointed executor, and qualified as such.
The widow, being dissatisfied with the provision made for her by it, attempted to renounce it, by the execution of a writing in May, 1827, not under seal, and tested by one witness only. An arrangement however was entered into, between her and her grandson, Thos. J.Gentry, in consequence of which she changed her determination on that subject. On the 26th of May, 1827, she executed a writing under her hand and sea], in which she refers to the writing evidencing her attempted renunciation, revokes it, and-expresses her willingness, that the same proceedings should be had, as if the renunciation had not been presented to court. From this, it would seem that the writing referred to had been presented to the county court; but there is no other testimony of the fact, if, indeed, it ever occurred, though it is probable that she intended to have made her renunciation in court, indeed, some of her sons-in-law had, in her behalf, opposed the admission of the will to record: and the application to record it had been continued, previous to the arrangement spoken of above. At. the same time that she executed this instrument, revoking her renunciation, Thomas J. Gentry executed and delivered to her the following writing:
fi Whereas, my grandmother, Gentry, has, in writing, renounced the provisions made for her, in the will of her husband, Martin Gentry, deceased, and now agrees to revoke the said renunciation, upon condition every provision contained in said wiij, in her' behalf, shall be fully restored and confirmed to her; I d.o hereby, on my part, agree, in consideration of said revocation, that all and every provision contained in said will, for her benefit, as far as I am concerned, shall be extended and confirmed to her, according to the true intent and meaning thereof.
T. J. Gentry. [Scab] r
*150 Martin Gentry, who died in April, 1827, had rented, in the early part of that year, for one year, to several persons, parts of the tract conveyed by him to Thos. J. Gentry, upon contracts, to receive the rents agreed upon in corn, payable in the fall.
The widow remained in the mansion-house of the testator, on the land conveyed as above stated, until the latter part of the year aforesaid, and then died, having made a will in which John Gentry was named as executor, who was accordingly qualified as such.
In the summer of 1827, Thomas J. Gentry, in pursuance of the will of the testator, sold the whole of the slaves, and other personal property, except the part loft to the widow. At the sale, she purchased a negro man, and a cart and oxen, at a price exceeding $300, for which she executed bond, with H. Jones and N. Lipscomb as her sureties, to the executor. Shortly after her death, T. J. Gentry, as executor of his grandfather, took possession of the properly'left to his grandmother for life, the produce made on the farm during 1827, with the rent-corn of that year,and the provisions on hand, and sold them.
John Gentry, executor of the deceased widow, Jones and Lipscomb, then filed their bill in chancery against Thomas J. Gentry, setting forth the.above recited facts; praying that an account might be taken, and he, Thomas J. Gentry, heid responsible for the amount of the produce of the farm, raised in 1827, the rent-corn, provisions on hand, &c. which had been sold by him, and which they insist belonged to the yvidow at the time of her death. They also pray, that the amount for which it should appear to be proper to decree against him, might be applied asa credit, on the note executed as the price of the negro man, cart and oxen.
Thomas J. Gentry answered the bill, insisting that the property, claimed by the exequtor of Mrs. Gentry, constituted a part of the estate of his testator; that he had, therefore, a right to sell.it as executor; and denied the jurisdiction of the chancellor, to render the decree prayed tor by the complainant, should it even be conceded that he had no right to sell the property..
He subsequently filed an amended answer, in which, be denies that Martin Gentry had any. right to dispose *151 of the land, previously conveyed to him; but alleges, that said Martin did not intend that his widow should have a life-estate in it, but merely that she should live on the land, and be decently supported by him, respondent; which intention and request, on the part of his grandfather, he had fully complied with, never having designed to deprive her of the benefit of the provisions of the will in her favor; although, had he been disposed to do so, be would have been justified, in refusing to permit her to, use any part of the proceeds of the farm, and to have denied to her the various articles which he had furnished for her support.
By a second amended answer filed by him, in the nature of a cross-bill, against the complainants, he sets up a claim against her executor, for services alleged to be rendered by him, and for the work and labor of negroes furnished in cultivating the farm, during the year 1827, and for necessaries furnished by him for her support; of which he prays an account might be taken, and the amount stand as a set-off against the claim against him, if the court should hold him responsible, for any portion of the property sold by him as executor.
To this cross bill the complainants answered, denying its allegations, and resisting the claim in Mo.
During the pendency of the suit, the complainants discharged the note, executed by Mary Gentry and sureties, for the price of the slave, &c. purchased by her at the sale of Martin Gentry’s property, and an admission of the fact was, by consent, entered on record.
In October, 1829, the circuit court, being of opinion feat Jones and Lipscomb had improperly joined as complainants, and were not entitled to any decree, dismissed the bill, as to them, with costs, and dismissed Thomas J. Gentry’s cross-bill, also with costs. A commissioner was then appointed, to take an account of the rents received for the year 1827, by Thomas J. Gentry as executor, and of the other personal property sold by him, which had been claimed by the executor of Mary Gentry, except the produce of the farm for that year, to which it was decided he had no just claim,
¡'y'oi'devi- . ,,-t nis ;i Ison take . a 'it' the .■mowed (jrandmother, and that she 3¡v-- on the land devised to grandson, and have the benefit ol living on it as long as she lives; grandson caimot take by tho devise, and charge the grand-nothrr ibrnecessaries or for services.
in M >rch, 1830. the cause was beard on the origina'! and amended hill, answers, &c. when the court, being of opi iion, that the executor of Mary Gentry, dec’d. was entitled, as such, to a part of the rent-corn for the year • 3 2?, rendered a decree in his favor for the value - t, and .«¡so, for some bogs sold by the executor ol Mat -i ' Gentry, being a part of those devised to the vti.i-iv /or iif'e; also, for some bacon on hand at her death, made from others, devised in the same way, and for some few'other articles, to wit; wool, cotton, flax, and salt; the whole sum decreed, amounting to $90 87i emits, exclusive of costs.
To reverse this decree, Thos . J. Gentry appealed; Jones and Lipscomb, with the.administrator dr. bonis non, of Mary Gentry, }oim Gentry having died, after the decree rendered, prosecute a writ of error. Each party has assigned errors,attacking the decree in every particular which was necessary to be considered.
That the cross bill of Thomas J. Gentry was properly dismissed, we have no doubt. The value of sue!) necessaries, as he may- have furnished to his grandmother, is not shown by the proof in the cause; bul that is unimportant, as we should not consider him entitled to a decree for them, had the proof, as to the amount, been satisfactory. Whatever they may have been, they were evidently furnished, from a conviction of the duty to take care of her, imposed on him by the will of his testator, and by his own written obligation to her, that “every provision contained in it, for her bench), should be extended and confirmed to her,” &c. fie does not pretend to assert any such claim, in his first and second answer. On the contrary, he seems to admit, that they were furnished from the considerations above alluded to; and th" tenor of the whole transaction strongly conduces to such a conclusion.
The propriety, moreover, of the decree dismissing his cross-bill, cannot now be enquired into; because he did not appeal from that, but from the decree in favor of John Gentry, pronounced in M-ircb, 1830. A similar remark will apply to his claim for services rendered, and the labor oí his own servants, in cultivating the fa¡m after the death of his testator, during the year 1827. But, independently of this, there is *153 sot even the slightest foundation to support it. It does not appear, that she ever requested him lo render any services for her,or to bestow laboron the farm, So far from it, the proof is, that she objected to any terference on his part wifh the business of the farm; and, indeed, he expressly denies, that she was entitled to any portion of its products. But had be rendered services, and furnished laborers at her instance, whatever compensation he might have been entitled to, would have been due to him individually, and not as executor; and it was in his official capacity that lie was urging the claim.
If principal sure-tie» catmot be ^ demand,
We shall now consider the claim of the plaintiffs -in error. We are at a loss to conjecture the reason, which induced the circuit court to hear the cause, ío Jones and Lipscomb; or, indeed, as to the claim of Thomas J. Gentry on his cross-bill, until the final hearing could be had, as to the whole controvery, which would certainly have been more regular and convenient. Whether any error iu dismissing the bill, as to Jones and Lipscomb, can be taken advantage of, by this writ of error, prosecuted by them and the administrator de bonis non of Mary Gentry, and assigning errors in the decree of March, 1830, it is’not important to consider, as we arc of opinion, that they were not entitled to any decree. It has been insisted by their -counsel, that they -would have had a right to file their bill against John and Thomas J. Gentry, praying that the latter might be compelled to collect the amount, from the former, d’ue on the note executed by his testatrix and themselves as her sureties. Suppose this position be conceded, that was not the object of th<*> bill; but to compel an allowance of the alleged demand against Thos. J. Gentry, as a set-off against the note. Now, there is no allegation in the bill, which wpuld have authorized a decree for the set-off prayed for, at the instance of John Gentry.; and if he would not be entitled to the aid of the chancellor, to effect such an object, why should the sureties of his testatrix -be entitled to it?
That note however has been paid off; and it only remains to be determined, after disposing of an objection1 to the jurisdiction, whether John Gentry, a* executor *154 of Mary Gentry, was entitled to a decree against Te-rnas J. Gentry, and, if so, to what extent.
dant, and re oeive the price, he is executor dc son tori, and holds the mo If one soil pro perty,of dece- or administrator, and may be subjected in 'chancery. e as trustee foTthe riühtful executor
Devise tion over1 of -that which is consumed by takesatfabso3 lute estate " amllimitaSion void.
One of the errors relied upon by the appellant, relates to the want of jurisdiction of a court of chancery; that if the allegation r . . and, m support oí it, he insists, of the appellee be true, that he sold property belonging to the estate of his testatrix, the appropriate remedy may be found in a court of common law.. That aa action at law might be maintained, upon such proof, cannot questioned; yet we- do not doubt the jurisdiction of the chancellor; because a person, by such conduct, would become, as an executor de son tort, liable to the rightful executor. As such, he holds the proceeds of the property, wrongfully sold by him, as a trustee, and could be. properly called to account for it in chancery. Whether the jurisdiction might not be sustained, on another ground, it is not important to inquire.
Whether (he executor of Mary Gentry, deceased, •was entitled to a decree, depends upon the question, whether Thoa. J. Gentry took into his possession and sold property., which, at the time of her death, belonged to her,. That he did so, is fully established by the -proof in the cause; and, indeed, is not denied by the answer of the appellant, if any part of the property sold by him, which had been devised to her for life by Martin Gentry, can, according to a proper construction of the will, be considered as her’s, unfettered by limitation! for life. Formerly, there could be no limitation of a chattel. According to the English law, a gift for life, conferred an absolute, unqualified right or interest. In process of time, it was decided; draw*n£ a ^istinethon between the use and the property; that the use might be given to one for life, and the property to another after the termination of the life-estate; and it is now the well-settled doctrine, that a limitation over, by will, after a life estate, in a chattel interest, is good. But to this rule there is an exception, as it relates to those articles, the use of which •consists in the consumption;such for instance as corn, hay, &c.; see III Vesey, 311; Gillespie vs. Miller, V Johnson’s Chancery Repts.; Westcott vs. Cady, Ibid, 334. In such cases, the limitation over, after the life-interest, is void. The hogs, which were given by the *155 will to Mary Gentry, were useful for consumption only; they were of a description, which shews that the testator intended they should be killed, for the use of his widow and her family. We are therefore of opinion, that as to the price of the hogs sold by Thomas J. Gentry, being a part of those already mentioned, and as to the price of the bacon on hand at the death of Mary Gentry, and as to the wool which had been procured from the sheep devised to her for life, the decree in favor of her executor is correct; and that it is also correct, in refusing any allowance for the price of produce raised on the farm during the year 1827; but so far as the decree goes for a portion Of the rent-corn, it is erroneous.
T. J. Gentry, for himself; Turner,hr administrators.
There is no ground upon which that claim can be supported. The decree must therefore be reversed with costs, in favor of T. J. Gentry, and the cause remanded to the circuit court, that a decree may be rendered in pursuance of this opinion.